## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
| )
NICK KORETOFF, d/b/a                )
NICK KORETOFF RANCHES, *et al.*,   )
 )
       **Plaintiffs,**       )
 )
**v.**                   )     **Civil Action No. 08-1558 (ESH)**
 )
THOMAS VILSACK, Secretary,[1]    )
United States Department of Agriculture,  )
 )
      **Defendant.**      )
_____ )

## MEMORANDUM OPINION

Plaintiff almond growers, handlers, and grower-handlers in the State of California bring this action pursuant to the Agricultural Marketing Agreement Act of 1937 ("AMAA"), 7 U.S.C. § 601 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, against the Secretary of the United States Department of Agriculture ("USDA") to challenge a USDA regulation requiring almond handlers to treat raw almonds in order to reduce the risk of *Salmonella* bacteria contamination. This matter is before the Court on defendant's motion to dismiss the complaint. For the reasons set forth below, the Court will grant the motion.

## BACKGROUND

The AMAA authorizes the Secretary of Agriculture to promulgate marketing orders designed to establish and maintain orderly marketing conditions for agricultural commodities. *See* 7 U.S.C. §§ 602, 608c. Marketing orders regulate the activities of processors, associations of

---

[1] Thomas Vilsack, current Secretary of the United States Department of Agriculture, is substituted for his predecessor, former Secretary Edward Schafer. Fed. R. Civ. P. 25(d).

producers, and others engaged in the handling of certain agricultural commodities, known under the Act as "handlers." *Id.* § 608c(1), *see also* 7 C.F.R. §§ 981.13, 981.16 (defining "handler" and "to handle" for purposes of the California almond market). They do not regulate farmers in their capacity as producers (or growers). *See id.* § 608c(13)(B). The AMAA specifies the terms and conditions that a marketing order may contain, including provisions "[l]imiting, or providing methods for the limitation of, the total quantity of any such commodity or product, or of any grade, size, or quality thereof . . . ." *Id.* § 608c(6)(A). Before issuing or amending a marketing order, the Secretary must conduct a formal rulemaking proceeding with prior notice and hearing. *Id.* § 608c(3). In addition, before a marketing order or amendment may become effective, its provisions must be adopted in a marketing agreement by handlers of not less than 50% of the volume of the commodity covered by the proposed order or amendment and approved by at least two-thirds of affected growers,[2] or it may be adopted by the Secretary without consent of a handler majority subject to certain findings by the Secretary and grower approval. *See id.* §§ 608c(8), (9).

The almond marketing order, 7 C.F.R. § 981.1 *et seq.*, regulates the handling of almonds grown in California and is administered locally by the Almond Board of California (the "Board"), a ten-member board composed of growers and handlers nominated by the industry and selected by the Secretary. 7 C.F.R. §§ 981.22, 981.30- 981.33. The Board has the power to "make rules and regulations to effectuate the terms and provisions" of the almond marketing order, *id.* § 981.38(b); *see also* 7 U.S.C. § 608c(7)(C), and "to establish, with the approval of the Secretary, such minimum quality and inspection requirements . . . as will contribute to orderly

---

[2] In the case of certain citrus fruits, the approval percentages are higher.

marketing or be in the public interest."  7  C.F.R. § 981.42(b).  The administrative rules and regulations implementing the order are codified at 7 C.F.R. §§ 981.401-981.481.

In August 2006, in response to *Salmonella* outbreaks in 2001 and 2004 and pursuant to its authority under the almond marketing order to set outgoing quality control requirements, the Board recommended a mandatory treatment program to reduce the potential for *Salmonella* bacteria in almonds.  *See* Outgoing Quality Control Requirements, 72 Fed. Reg. 15,021, 15,022 (Mar. 30, 2007).  Specifically, the Board recommended, with certain exceptions, that handlers subject their almonds to a process that would achieve a minimum 4-log reduction in *Salmonella* bacteria prior to shipment.[3]  *Id.*  In December 2006, the Secretary published the Board's recommendation as a proposed rule, 71 Fed. Reg. 70,683 (proposed Dec. 6, 2006), and following a 45-day comment period, adopted the final rule without substantial change on March 30, 2007. 72 Fed. Reg. 15,021.

Plaintiffs allege that the almond treatment regulation (1) exceeds the authority granted by 7 C.F.R. § 981.42 to establish quality control requirements; (2) creates a substantive rule adopted without the use of a formal rulemaking process and grower approval as required by the AMAA and by USDA Rules of Practice; (3) regulates food safety, an area beyond the limited authority granted to the Secretary under the AMAA; (4) is arbitrary, capricious, and not in accordance with law, in violation of the APA; (5) depends upon the lapsed authority of 7 C.F.R. § 981.42 and is therefore void; and (6) improperly regulates the retail market for almonds in violation of the AMAA.  (*See* Am. Compl. ¶¶ 4-5, 74-93.)

---

[3] A 4-log reduction decreases bacteria by a factor of 10,000.  *Id.* at 15,022.

## ANALYSIS

### I.      The Claims of Almond Handlers Must be Dismissed for Lack of Subject Matter Jurisdiction

Defendant argues that plaintiff almond handlers' claims must be dismissed for failure to exhaust their administrative remedies.  The AMAA authorizes an aggrieved handler to file a petition with the Secretary "stating that any [marketing] order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom."  7 U.S.C. § 608c(15)(A).  After a hearing, the Secretary will rule on the petition, which ruling "shall be final, if in accordance with law." *Id.*  If unsatisfied with the Secretary's decision, the handler may seek judicial review in federal district court.  *Id.* § 608c(15)(B).

These provisions have been interpreted by the Supreme Court to require handlers to exhaust their administrative remedies prior to seeking judicial review.  *See United States v. Ruzicka*, 329 U.S. 287, 294 (1946) ("Congress has provided that the remedy in the first instance must be sought from the Secretary of Agriculture.  It is on the basis of his ruling, and of the elucidation which he would presumably give to his ruling, that resort may be had to the courts."). Consistent with *Ruzicka*, the D.C. Circuit has unequivocally held that "the AMAA's administrative appeal process is a *mandatory* procedure that handlers must follow prior to seeking judicial review" and from which they "may not be excused from complying."  *Edaleen Dairy, LLC v. Johanns*, 467 F.3d 778, 784-85 (D.C. Cir. 2006) (emphasis in original); *see also Block v. Community Nutrition Institute*, 467 U.S. 340, 346 (1984) (noting in the context of a consumer suit that "Section 608c(15) requires handlers first to exhaust the administrative remedies made available by the Secretary" prior to seeking judicial review); *Hershey Foods Corp. v. Dep't of Agric.,* 293 F.3d 520, 526 (D.C. Cir. 2002) (stating that pursuant to § 608c(15),

"the remedy in the first instance must be sought from the Secretary"); *Saulsbury Orchards & Almond Processing, Inc. v. Yeutter*, 917 F.2d 1190 (9th Cir. 1990) (affirming dismissal of suit by almond handlers for failure to exhaust).

Faced with this clear precedent, plaintiffs turn to *Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004), which they claim mandates the conclusion that the AMAA's exhaustion requirement is nonjurisdictional.  In that case, plaintiff importers of avocados and avocado products sued alleging that the Hass Avocado Promotion, Research, and Information Act, 7 U.S.C. § 7801 *et seq.*, violated their First Amendment right to be free of compelled speech.  The district court, relying on the Act's exhaustion requirement, which was virtually identical to the AMAA's exhaustion provision, dismissed the complaint because plaintiffs had not exhausted their administrative remedies.  The D.C. Circuit reversed.  In doing so, the Court distinguished between judicially-created nonjurisdictional exhaustion, which may be excused by a court, and statutorily mandated jurisdictional exhaustion, which cannot be excused.  370 F.3d at 1247.  The Court concluded that the statutory provision at issue did not mandate exhaustion because it failed to contain "sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion."  *Id.* at 1248 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)).  The Court therefore remanded the case to the district court to determine whether exhaustion should be excused.

Despite the similarities between the exhaustion provision at issue in *Avocados Plus* and the one at issue here, it is *Edaleen Dairy* that controls this case.  In *Edaleen Dairy*, the D.C. Circuit specifically rejected plaintiff's argument that the AMAA exhaustion requirement should be excused because the issue presented had been "fully framed" in the rulemaking process, the Secretary's "full expertise" had already been brought to bear, and it would be "utterly

duplicative" to require administrative review prior to suit.  467 F.3d at 784.  The Court

concluded that "[t]here is no need to address these arguments . . . because courts have held on

numerous occasions that the AMAA's exhaustion requirement is mandatory.  Thus, we hold that

Edaleen *may not be excused* from complying with this requirement."  *Id.* (emphasis added); *see*

*also Hettinga v. United States*, 518 F. Supp. 2d 58, 62 (D.D.C. 2007) (dismissing producer-

handler claims for lack of subject matter jurisdiction based on their failure to exhaust

administrative remedies), *appeal docketed*, No. 07-5403 (D.C. Cir. Dec. 19, 2007); *Nw. Indep.*

*Producers Ass'n v. Veneman*, 312 F. Supp. 2d 23, 25 (D.D.C. 2004) (dismissing handler claims

for same reason).  "[A] mandatory [but nonjurisdictional] exhaustion requirement may be

excused in appropriate circumstances, whereas a jurisdictional exhaustion requirement never

may be excused by a court."  *Munsell v. USDA*, 509 F.3d 572, 579 (D.C. Cir. 2007).[4]  Thus,

while the Court in *Edaleen Dairy* did not explicitly state that the exhaustion requirement was

jurisdictional, it did refuse to consider plaintiff's reasons why exhaustion should be waived,

instead finding that the requirement could not be excused.  This Court is bound by *Edaleen*

*Dairy*.

     Moreover, although the D.C. Circuit in *Avocados Plus* rejected the argument that *Ruzicka*

compelled the conclusion in that case that exhaustion was jurisdictional, the Court recognized

that *Avocados Plus* dealt with a statutory enforcement scheme that "[u]nlike the AMAA . . . does

not provide for comprehensive market regulation that could be disrupted by ill-timed judicial

---

[4] Although *Munsell*, unlike *Avocados Plus*, came after *Edaleen Dairy*, that case did not involve
the AMAA, and it is axiomatic that "one panel [of the D.C. Circuit] cannot overrule another."
*Brown v. Brody*, 199 F.3d 446, 453 (D.C. Cir. 1999) (citation omitted).  Likewise, plaintiffs'
reliance on *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), is misplaced, as that case did not
discuss the AMAA or make any attempt to distinguish the Supreme Court's decisions in *Ruzicka*
or *Community Nutrition*.

interference." 467 F.3d at 1249.  In addition, although the Court also opined that under

precedents more modern than *Ruzicka*, the AMAA's exhaustion requirement would be

considered nonjurisdictional, it ultimately relied on the *Ruzicka* Court's own limitation of its

holding to "the precise problem before us in relation to the provisions of the particular Act

immediately relevant."  *Id.* at 1250 (quoting *Ruzicka*, 329 U.S. at 295).  As in *Ruzicka*, this case

involves the issue of whether handlers under the AMAA must exhaust administrative remedies;

thus, the Supreme Court's holding in that case controls here.

## II.     The Claims of Grower-Handlers and Retailers Must be Dismissed for Lack of Subject Matter Jurisdiction

Moreover, grower-handlers and retailers in this case must also exhaust their

administrative remedies prior to bringing suit.  Because growers may in some circumstances be

able to seek judicial review without being subject to the exhaustion requirement, the crucial

question with respect to grower-handlers is whether they are bringing suit as growers or as

handlers.  *Edaleen Dairy*, 467 F.3d at 783.  Because the almond treatment regulation imposes the

treatment obligation only on handlers, it necessarily follows that plaintiff grower-handlers have

to be suing in their capacity as handlers.[5]  *See id.* at 783 ("If a producer-handler asserts an injury

in its capacity as a handler, then it is bound by the administrative exhaustion requirements of the

AMAA.").

For the same reason, plaintiffs' retailer claims must also be dismissed for failure to

exhaust.  A number of plaintiffs who sell almonds on the retail market claim that the almond

marketing order unlawfully classifies them as handlers.  *See* 7 C.F.R. §§ 981.13, 981.16

(defining terms "handler" and "to handle"); 7 U.S.C. § 608c(13) (prohibiting regulation by

---

[5] While all plaintiffs, whether growers, handlers or both, claim that the almond treatment regulation reduces the marketability of their almonds (*see* Am. Compl. ¶¶ 31-35), the regulation imposes direct burdens on handlers only.

marketing order of producers in their capacity as producers and, in the case of marketing orders

adopted without the consent of a handler majority, of retailers in their capacity retailers).  By

their own admission, however, plaintiffs are only subject to the marketing order because they fit

within the order's definition of handler.  Accordingly, plaintiffs are clearly bringing this

challenge in their capacity as handlers and must therefore first exhaust their administrative

remedies.[6]  *See United States v. Lamars Dairy, Inc.*, 500 F.2d 84, 85 (7th Cir. 1974) (exhaustion

required where defendants claim to have been incorrectly classified as handlers).

**III.    The Claims of Growers Must be Dismissed Because They Have No Right to Judicial
         Review Under the Circumstances of this Case**

Defendant also contends that the AMAA by implication "preclude[s] judicial review" of

grower claims, thereby withdrawing a cause of action under the APA, 5 U.S.C. § 701(a)(1).

(Mot. to Dismiss at 6-7.)  The Supreme Court's decision in *Block v. Community Nutrition

Institute*, 467 U.S. 340 (1984), supports this claim.  There, the Court rejected a suit by consumers

challenging milk marketing orders.  In doing so, the Court noted that (1) Congress channeled

disputes regarding marketing orders to the Secretary in the first instance because of its belief that

he had the necessary expertise to resolve them; and (2) it would provide handlers with a

convenient way to evade the statutory exhaustion requirement should consumers be permitted to

bring suit.  467 U.S. at 347-48.  Therefore, the Court concluded that "Congress intended that

judicial review of market orders issued under the [AMAA] ordinarily be confined to suits

brought by handlers in accordance with 7 U.S.C. § 608c(15)."  *Id.* at 348.  Moreover, the Court

held that the presumption favoring judicial review of administrative action had been "overcome

---

[6] Notably, the existing definition of "to handle" was adopted in 1996.  *See* Order Amending
Almond Marketing Order, 61 Fed. Reg. 32,917 (June 26, 1996).  However, plaintiffs apparently
had little concern with the applicability of the definition to their activities prior to the adoption of
the almond treatment regulation in 2007.

by inferences of intent drawn from the statutory scheme as a whole." *Id.* at 349 (citations

omitted).  Specifically, the Court noted that "when a statute provides a detailed mechanism for

judicial consideration of particular issues at the behest of particular persons, judicial review of

those issues at the behest of other persons may be found to be impliedly precluded."[7] *Id.*; *see*

*also Benson v. Schofield*, 236 F.2d 719, 722 (D.C. Cir. 1956) (finding that producers are to be

given no greater status by the AMAA than handlers who must exhaust); *Nw. Indep. Producers*

*Ass'n v. Veneman*, 312 F. Supp. 2d 23, 26 (D.D.C. 2004) ("[T]he inclusion of producers in the

administrative process but their exclusion from the provisions enabling judicial review is the

type of omissions that indicate a specific Congressional intent to omit.").  The Court's statements

apply equally to growers.  Should they be allowed to bring a direct action in federal court,

handlers could easily circumvent the mandatory exhaustion requirement merely by finding a

grower who would be willing to join in or initiate suit.

Nevertheless, while growers normally have no right to sue, the Supreme Court has

recognized a narrow exception to this rule.  In *Stark v. Wickard*, 321 U.S. 288 (1944), the Court

held that milk producers had standing to challenge certain deductions by the Secretary from the

producer settlement fund.  Because producers were guaranteed by statute and by marketing order

minimum prices and the "challenged deduction[s] reduce[d] *pro tanto* the amount actually

received by the producers for their milk," the Court found that the producers were alleging injury

to their "definite personal rights" that were "not possessed by the people generally."  *Id.* at 302,

304, 309.  Therefore, the producers had standing to object to the administration of the settlement

fund.  Moreover, no other forum existed to challenge the Secretary's actions since handlers, who

---

[7] For this reason, plaintiffs' reliance (*see* Opp'n at 13) on *Aid Ass'n for Lutherans v. U.S. Postal Service*, 321 F.3d 1166 (D.C. Cir. 2003), a case that did not involve the AMAA, for the proposition that a strong presumption exists in favor of judicial review under the APA is misplaced.

had no financial interest in the fund or its use, had no standing to sue.  *Id.* at 308.  Thus, the

Court concluded that the statutory scheme as a whole implicitly authorized producer suits to

enforce these rights.  *See id.* at 306-09; *see also Edaleen Dairy, LLC v. Johanns*, 467 F.3d 778,

783 (D.C. Cir. 2006) (noting that *Stark* turned on "two key factors:"  that producers (1) were not

merely objecting to a regulation, but were suing to protect their definite personal rights and (2)

did not have access to an administrative remedy).

In this case, grower plaintiffs challenge the USDA's authority to mandate treatment of

almonds.  In doing so, their fundamental concern is with the impact of the treatment regulation

on their ability to sell their almonds in a niche organic market at a premium.  (*See* Am. Compl.

¶¶ 29-33.)  Thus, plaintiffs are merely objecting to a regulation rather than asserting a definite

personal right granted by the AMAA.[8]  In *Stark*, the Supreme Court specifically recognized that

not every loss would qualify as a deprivation of a definite personal right of the producer.  As the

Court noted, "[t]he petitioners' complaint is not that their blended price [*i.e.*, the uniform

minimum price less administrative deductions] is too low, but that the blended price has been

reduced by a misapplication of money deducted from the producers' minimum price." 321 U.S.

at 308-09; *see also Benson v. Schofield*, 236 F.2d 719, 722 (D.C. Cir. 1956) ("[A]ppellees to

have standing in court, must show an injury or threat to a particular right of their own . . . .  Mere

loss of income in consequence of the action of Government or economic disadvantage, by itself,

constitutes *damnum absque injuria* which does not confer standing." (citation and internal

quotation marks omitted)); *Ark. Dairy Coop., Inc. v. USDA*, 576 F. Supp. 2d 147, 155-56

_____

[8] As defendant points out, plaintiffs' claim (Opp'n at 8) that they have a definite personal right to "approve or veto marketing order provisions" is, in reality, a challenge to the Secretary's authority to issue the treatment regulation as an administrative regulation rather than as an amendment to the almond marketing order, which would trigger the AMAA's producer approval and public hearing requirements.  (Reply at 11-12.)  This challenge is not a uniquely producer claim.

(D.D.C. 2008) (holding that producers challenging an order that reduced the minimum prices dairy farmers receive under milk marketing orders were objecting to a regulation rather than asserting a definite personal right and therefore lacked standing), *appeal docketed*, No. 08-5406 (D.C. Cir. Sept. 19, 2008).

Moreover, unlike *Stark*, an administrative remedy exists in this case since handlers can be expected to challenge the allegedly unlawful agency action.  Handlers, like growers, have an interest in receiving the highest price for their almonds.[9]  In fact, the almond treatment regulation, which plaintiffs allege is costly and lowers the value of their almonds in the organic market (*see* Am. Compl. ¶¶ 29-35), imposes direct costs only on handlers.  "[T]he very presence of handlers as plaintiffs in the suit leads inexorably to the conclusion that a suit by a producer is not necessary to 'ensure the statute's objectives will not be frustrated.'"  *Nw. Indep. Producers Ass'n*, 312 F. Supp. 2d at 27 (citing *Community Nutrition*, 467 U.S. at 352).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss will be granted.  A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: March 9, 2009

[9] While, as plaintiffs assert, handler and grower interests can sometimes be antagonistic (*see* Opp'n at 32) since handlers have an interest in *paying* the lowest price possible for almonds, both handlers and growers have the same interest in *selling* at the highest price.

- 11 -