UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NICK KORETOFF, d/b/a<br>NICK KORETOFF RANCHES, *et al.*,<br><br>   Plaintiffs,<br><br>   v.<br><br>THOMAS VILSACK, Secretary,<br>United States Department of Agriculture,<br><br>   Defendant. | Civil Action No. 08-1558 (ESH) |

## MEMORANDUM OPINION

Plaintiffs, California almond growers and grower-retailers, brought suit against the Secretary of the United States Department of Agriculture ("USDA") to challenge a USDA regulation requiring almond handlers to treat raw almonds in order to reduce the risk of *Salmonella* bacteria contamination.[1] In a Memorandum Opinion issued on March 9, 2009, the Court granted defendant's motion to dismiss. *Koretoff v. Vilsack*, 601 F. Supp. 2d 238 (D.D.C. 2009). Four grower-retailers have now moved, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(3), for reconsideration and to alter or amend the Court's judgment, and plaintiff growers have moved, pursuant to Rule 59(e) only, for the same relief. For the reasons stated herein, the Court will deny both motions.

---

[1] The original suit also included almond handlers and grower-handlers. However, those plaintiffs have not moved for reconsideration.

**ANALYSIS**

A Rule 59(e) motion may be granted if the court "finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir. 1996) (per curiam) (citation and internal quotation marks omitted). Such motions "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). "A Rule 59(e) motion is not a second opportunity to present argument upon which the Court has already ruled, nor is it a means to bring before the Court theories or arguments that could have been advanced earlier." *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997), *aff'd sub nom. Hicks v. United States*, No. 99-5010, 1999 U.S. App. LEXIS 13376 (D.C. Cir. May 17, 1999).

Similarly, to prevail on a motion pursuant to Rule 60(b)(3), a plaintiff "must prove by clear and convincing evidence some sort of fraud, misrepresentation or other misconduct." *Martin v. Howard Univ.*, No. 99-1175, 2006 U.S. Dist. LEXIS 72303, at *8 (D.D.C. Oct. 4, 2006) (citation omitted); *see also Summers v. Howard Univ.*, 374 F.3d 1188, 1192 (D.C. Cir. 2004).

**I.     Grower-Retailer Plaintiffs**

The four grower-retailer plaintiffs contend that the Court erroneously concluded that they were handlers and thus had to exhaust their administrative remedies. (*See* Grower-Retailers' Mot. for Recons. at 3, 5-6.) However, according to plaintiffs, their complaint alleges that "(1) The [Agricultural Marketing Agreement Act of 1937 ("AMAA")], at 7 U.S.C. § 608c(13), unequivocally proscribes regulation of any almond retailer in its retail capacity; and (2) the Almond Order, by 7 C.F.R. § 981.13, and interpretive rules in § 981.413, places severe limits –

by location, by sales venue, by method of sale, by customer, and by transaction volume – on plaintiffs in their capacity as non-handler almond retailers."[2]  (*Id.* at 2.)

---

[2] Marketing orders promulgated pursuant to the AMAA regulate the activities of processors, associations of producers, and others engaged in the handling of certain agricultural commodities, known under the Act as "handlers."  7 U.S.C. § 608c(1).  They may not regulate farmers in their capacity as producers (or growers) or retailers in their retail capacity (except for retailers of milk and its products).  *See id.* § 608c(13).  Specifically, with respect to retailers, the AMAA provides in pertinent part that "[n]o order issued under subsection (9) of this section shall be applicable to any person who sells agricultural commodities or products thereof at retail in his capacity as such retailer . . . ."  *Id.* § 608c(13)(A). The almond marketing order and its implementing regulations define the terms "handler" and "to handle" and provide additional guidance concerning the retailer exemption as follows:

> Handler means any person handling almonds during any crop year, except that such term shall not include either a grower who sells only almonds of his own production at retail at a roadside stand operated by him, or a person receiving almonds from growers and other persons and delivering these almonds to a handler.

7 C.F.R. § 981.13.

> To handle means to use almonds commercially of own production or to sell, consign, transport, ship (except as a common carrier of almonds owned by another) or in any other way to put almonds grown in the area of production into any channel of trade for human consumption worldwide, either within the area of production or by transfer from the area of production to points outside or by receipt as first receiver at any point of entry in the United States or Puerto Rico of almonds grown in the area of production, exported therefrom and submitted for reentry or which are reentered free of duty. However, sales or deliveries by a grower to handlers, hullers or other processors within the area of production shall not, in itself, be considered as handling by a grower.

*Id.* § 981.16.

> The term at retail at a roadside stand as used in § 981.13 shall be defined to mean sales for home use and not for resale which are not in excess of 100 pounds net kernel weight to any one customer per day.  Sales of almonds at certified farmers' markets in compliance with section 1392 of the regulations of the California Department of Food and Agriculture shall be construed as "roadside" sales for the purpose of § 981.13 where these conditions are met.

*Id.* § 981.413.

As the Court recognized in its original opinion, the issue here concerns a dispute between plaintiffs and the USDA over the proper definition of various terms used in the AMAA. Plaintiffs complain of the agency's "expansive definition of handling" (Am. Compl. ¶ 91), which they claim violates the AMAA by including certain retail activities. Thus, the Court found that because the agency had labeled those who engage in such activities as "handlers" and thereby subjected them to the almond marketing order, "plaintiffs are clearly bringing this challenge in their capacity as handlers and must therefore first exhaust their administrative remedies." *Koretoff*, 601 F. Supp. 2d at 243 (citing *United States v. Lamars Dairy, Inc.*, 500 F.2d 84, 85 (7th Cir. 1974) (exhaustion required where defendants claim to have been incorrectly classified as handlers)). Plaintiffs have not demonstrated any error in the Court's finding.

While plaintiffs take issue with the Court's statement that "[b]y their own admission, . . . plaintiffs are only subject to the marketing order because they fit within the order's definition of handler," *Koretoff*, 601 F. Supp. 2d at 243, the Court meant only that plaintiffs' own statements make clear that the gist of their complaint is a dispute over definitions contained in the almond marketing order and its implementing regulations. (*See* Am. Comp. ¶¶ 91 -93 (alleging that the USDA's "expansive definition of handling," in which the agency "purports to define and regulate the handling of all California almonds sold in commerce for human consumption, exempting only a grower's production of almonds sold by the producer (grower) at his retail farm stand," had "limited or precluded plaintiff producers (growers) from selling their production in retail sales" in violation of the AMAA and requesting a declaratory judgment to that effect); *see also* Declaration of Mark McAfee at ¶ 7 (acknowledging that "[w]ith the USDA [almond treatment] Rule in place, I cannot expand my retail operation without investing in the treatment of my almonds" and that the Almond Board had "threatened to cite me and fine me for

violation of the regulation") (attached to Grower-Retailers' Mot. for Recons.).)  Contrary to plaintiffs' assertion, the Court did not find that plaintiffs *are* handlers, but merely recognized that their falling within the USDA's definition of "handler" provides the basis for the agency's regulatory power over them.

That plaintiffs now contend that they have refrained from engaging in certain retail activities that the USDA has defined as handling does not change the outcome.  The fact remains that should plaintiffs choose to engage in these activities, they would be subjected to the almond treatment regulation because the agency would define them as handlers, in which case they would be required to proceed initially before the agency.  *See Lamars Dairy, Inc.*, 500 F.2d at 85; *United States v. Country Lad Foods, Inc.*, 327 F. Supp. 395 (N.D. Ga. 1971); *United States v. Hinman Farms Prods., Inc.*, 156 F. Supp. 607, 610-11 (N.D.N.Y. 1957).  Plaintiffs cannot avoid this exhaustion requirement by claiming that they are not handlers because they refuse to engage in agency-defined handling activities in order to avoid regulation.[3]  To permit plaintiffs to skirt the exhaustion requirement in this way would "undermine the congressional preference for administrative remedies and provide a mechanism for disrupting administration of the congressional scheme."  *Block v. Community Nutrition Institute*, 467 U.S. 340, 352 (1984).

Moreover, the Court rejects plaintiffs' claim that "the Secretary's contention that he can equate 'retailing' with 'handling'" "prematurely argues the legal merits of the case." (Grower-Retailers' Reply at 5.)  In fact, it is plaintiffs who seek to have the Court, without the benefit of the USDA's expertise, decide whether the agency can draw the line between retail and handling

---

[3] Plaintiffs claim that they cannot obtain administrative review because they are not handlers. (Grower-Retailers' Reply at 6-7.)  However, nothing prevents plaintiffs from engaging in activity they deem retail, but which the agency deems handling, and, as defendant points out, requiring plaintiffs to do so in order to complain about the regulation of these activities is not manifestly unjust.  (*See* Def.'s Opp'n to Grower-Retailers' Mot. for Recons. at 10.)

activities as it has done. As the Supreme Court has recognized, "[t]he regulation of agricultural products is a complex, technical undertaking. Congress channelled disputes concerning marketing orders to the Secretary in the first instance because it believed that only he has the expertise necessary to illuminate and resolve questions about them." *Community Nutrition*, 467 U.S. at 347. Therefore, the Court remains convinced that plaintiffs must first present their claims to the agency.

## II.     Grower Plaintiffs

The almond grower plaintiffs move for reconsideration based on the following three alleged errors: (1) the conclusion that growers lack standing; (2) the conclusion that growers' claims are statutorily precluded; and (3) the conclusion that "the almond growers' interests are 'necessarily' or 'inexorably' the same as, or converged with, those of handler plaintiffs." (Growers' Mot. for Recons. at 1-2.)

In its prior opinion, this Court found, based on *Community Nutrition*, that judicial review of marketing orders must ordinarily be confined to suits by handlers and that growers' claims were "impliedly precluded" based on "inferences of intent drawn from the statutory scheme as a whole." *See Koretoff*, 601 F. Supp. 2d at 243-44 (quoting *Community Nutrition*, 467 U.S. 340 at 349). Nevertheless, the Court noted that the Supreme Court, in *Stark v. Wickard*, 321 U.S. 288 (1944), had recognized a narrow exception to the rule. While the Court described the holding in *Stark* in terms of standing rather than statutory preclusion, it nevertheless recognized that the decision turned on the fact that "producers were alleging injury to their 'definite personal rights' that were 'not possessed by the people generally'" and the fact that no other forum existed to challenge the Secretary's actions because handlers, who had no financial interest in the producer settlement fund at issue in *Stark*, could not question its use. *Koretoff*, 601 F. Supp. 2d at 244

(quoting *Stark*, 321 U.S. at 302).  Applying these standards to grower plaintiffs in this case, the Court concluded that they were not asserting a definite personal right guaranteed by the AMAA and that an administrative remedy existed since handlers could challenge the allegedly unlawful agency action.  *Id.* at 244-45.  Thus, growers were precluded from bringing suit.

As an initial matter, the Court notes that plaintiffs raise no new arguments to rebut these conclusions, but simply rehash arguments that were previously rejected by the Court.  Therefore, they have established no basis for reconsideration.  *See W.C. & A.N. Miller Cos.*, 173 F.R.D. at 3.  In any event, plaintiffs have failed to demonstrate any error in the Court's articulation of the relevant legal standards or its conclusions based on those standards.  First, while plaintiffs attempt to read *Stark* broadly to permit all producer suits (*see* Growers' Mot. for Recons. at 5; Growers' Reply at 3), as the D.C. Circuit has recognized, "*Stark* was a limited holding that turned on the unique circumstances of that case."  *Edaleen Dairy, LLC v. Johanns*, 467 F.3d 778, 782 (D.C. Cir. 2006).  In *Edaleen*, the D.C. Circuit explained that

> the direct right of action that was allowed in *Stark* turned on two key factors. First, the Court emphasized that the producers were not merely objecting to a regulation; rather, they were suing to protect their 'definite personal rights' in the settlement pool fund.  *Id.* at 308 ("It is because every dollar of deduction comes from the producer that he may challenge the use of the fund.").  Second, the Court stated that these producers were able to sue directly in district court because they did not have access to an administrative remedy under the AMAA.  Overall, while handlers are always required to exhaust their administrative remedies prior to seeking judicial review, producers may be able to avoid the exhaustion requirement if they are suing to protect 'definite personal rights' for which there is no access to an administrative remedy.

*Id.* at 782-83 (citations omitted).  In this case, grower plaintiffs are objecting to the almond treatment regulation rather than suing to protect any definite personal right granted by the AMAA.  *See Koretoff*, 601 F. Supp. 2d at 244.  Thus, they may not seek judicial review.

Moreover, *Stark* was based on the fact that producers, the only parties with an interest in the settlement fund, were the only ones who could challenge the allegedly unlawful agency action.

> '[Handlers] [could not] question the use of the fund, because handlers had no financial interest in the fund or its use.' Thus, there was 'no forum' in which this aspect of the Secretary's actions could or would be challenged. Judicial review of the producers' complaint was therefore necessary to ensure achievement of the Act's most fundamental objectives – to wit, the protection of the producers . . . .

*Community Nutrition*, 467 U.S. at 351-52 (citations omitted). Thus, because the producers' interest in *Stark* could not be protected by the statutory provisions authorizing suits by handlers, the Supreme Court concluded that Congress could not have intended to preclude such producer suits. By contrast, as this Court recognized in its prior opinion, handlers in this case can challenge (and, in fact, have done so here) the almond treatment regulation.[4] *See Koretoff*, 601 F. Supp. 2d at 245.

Plaintiffs challenge the Court's view of the cases, contending that "[t]he controlling standard for claim preclusion . . . is whether Congress intended 'to protect the interests of the class' to which a plaintiff belongs." (Growers' Reply at 3 (quoting *Barlow v. Collins*, 397 U.S.

---

[4] While plaintiffs characterize the *Stark* opinion as having been premised on the fact that the producers there claimed, as growers do here, that the Secretary lacked the statutory authority to enact the challenged marketing order provisions (*see* Growers' Mot. for Recons. at 5; Growers' Reply at 3), in fact, *Stark* acknowledged producers' claim in making its point that the right to judicial review was the only way to ensure that producers' definite personal rights in the producer settlement fund would be protected. Specifically, the Court noted that producers' only opportunity to complain about the contested deduction to the settlement fund was to appear at a hearing and to vote for or against the proposed marketing order requiring the deduction. *Stark*, 321 U.S. at 307. However, because the producers complained that contested provisions of the order were beyond the Secretary's delegated powers, the Court noted that an opportunity to be heard and to vote "cannot protect minority producers against unlawful exactions which might be voted upon them by majorities." *Id.* Thus, absent judicial intervention, the validity of the Secretary's action could not be challenged. *See id.* at 308-09. By contrast, in the instant case, the validity of USDA's enactment of the almond treatment regulation can be challenged by handlers both administratively and thereafter in court.

159, 167 (1970)).) Thus, plaintiffs argue that, pursuant to *Stark*, producers may always challenge allegedly unlawful agency action.  The Court, however, rejects this view as inconsistent with both *Edaleen* and *Community Nutrition*.

Grower plaintiffs also argue that handlers cannot protect their interests.  In doing so, they attempt to distinguish their specific injuries from those of handlers.  (*See* Growers' Mot. for Recons. at 11.)  The Court, however, did not hold that grower and handler injuries were identical, merely that both parties have a similar interest in receiving the highest price for almonds.  *Koretoff*, 601 F. Supp. 2d at 245; *see also Community Nutrition*, 467 U.S. at 352 (noting that because handlers and consumers are both "interested in obtaining reliable supplies of milk at the cheapest possible prices," handlers could be expected to challenge unlawful USDA action).  (*See* Am. Compl. ¶¶ 31, 34-35 (noting that almond treatment regulation has resulted in reduced returns for growers and in handlers being "functionally shut . . . out" of the organic market and having to sell almonds to consumers at severe discounts).)  While the precise nature of their alleged injuries may not be the same, what is clear is that both growers and handlers perceive adverse effects from the almond treatment regulation such that both groups have an interest in challenging the authority of the USDA to adopt the regulation.

In addition, growers argue that their claims are unique because they alone are the ones who granted the Secretary authority to enact limited quality control regulations, and only they possess the right to approve amendments to the almond marketing order.  (*See* Growers' Mot. for Recons. at 11; Growers' Reply at 5-6.)  It is unclear, however, how either of these factors negatively impacts the ability of handlers to challenge the almond treatment regulation.  While growers seek to cast doubt on the ability of handlers to challenge the USDA's failure to obtain grower approval of the treatment regulation, it is unclear why handlers would be unable to

challenge the procedures the agency used to enact the regulation if, in fact, these procedures were incorrect. Moreover, growers' attempts to analogize their situation to cases dealing with vicarious liability, intervention under Fed. R. Civ. P. 24(a), and class actions are inapposite, as this case involves none of those issues, and neither *Stark* nor *Community Nutrition* relied on those standards.

Accepting plaintiffs' arguments would lead to the anomalous result that handlers would be required to challenge the almond treatment regulation before the agency prior to bringing suit, while growers could proceed directly to court. It is unlikely that Congress intended such a result. *See Community Nutrition*, 467 U.S. at 347 ("Respondents would have us believe that, while Congress unequivocally directed handlers first to complain to the Secretary that the prices set by milk market orders are too high, it was nevertheless the legislative judgment that the same challenge, if advanced by consumers, does not require initial administrative scrutiny. There is no basis for attributing to Congress the intent to draw such a distinction.") Thus, the Court concludes that plaintiff growers have failed to demonstrate any error or manifest injustice in the Court's prior ruling.

## CONCLUSION

For the foregoing reasons, the motions for reconsideration of almond grower-retailer plaintiffs and almond grower plaintiffs will be denied. A separate order accompanies this Memorandum Opinion.

                                                         /s/
                                       ELLEN SEGAL HUVELLE
                                       United States District Judge

Date: June 17, 2009